IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 108-168 |
| | ) | |
| CHRISTOPHER GIOVANI MECADO | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In the above-captioned criminal case, the government has accused Defendant of conspiracy to distribute and possess with intent to distribute cocaine hydrochloride, cocaine base, and marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. The matter is now before the Court on Defendant's motion to suppress the drugs found at his residence on January 6, 2009, the day of his arrest. (Doc. no. 157). The Court held an evidentiary hearing on March 18, 2009, at which time the Court heard the testimony of Investigator Meekail Shaheed ("Inv. Shaheed") of the Richmond County Sheriff's Office ("RCSO"). For the reasons developed more fully herein, the Court **REPORTS** and **RECOMMENDS** that the motion to suppress be **DENIED**.

### I. FACTS

Inv. Shaheed is an investigator with the RSCO, and at the time of the incident in question, he was assigned to the Drug Enforcement Administration Task Force. Defendant's arrest was part of a "round-up" in the Augusta area, and on the morning of January 6, 2009, Inv. Shaheed met with other law enforcement officers at 6:30 a.m. to participate in an

operations briefing. Inv. Shaheed was made aware of the arrest warrant for Defendant and personally observed it during the course of this briefing. However, no search warrant for Defendant's residence had been issued. At 7:30 a.m., Inv. Shaheed and a team of other officers[1] proceeded to Defendant's residence at 2621 Castletown Drive in Hephzibah, Georgia, to execute the arrest warrant. Inv. Shaheed testified that Defendant's sister answered the door, and he informed her of the arrest warrant for Defendant and asked where to find him. Defendant's sister informed Inv. Shaheed that she believed Defendant was asleep in his bedroom, and Inv. Shaheed proceeded to the room indicated by Defendant's sister. Inv. Shaheed testified that immediately upon entering the bedroom, he observed Defendant still sleeping and smelled the odor of marijuana. He also observed what appeared to be cocaine in a clear plastic bag on the night stand next to the bed where Defendant was sleeping and an open shoebox at the foot of the bed, which contained seven clear plastic bags of what appeared to be marijuana. Inv. Shaheed testified that based on his training and experience, he knew that the substances were cocaine and marijuana as soon as he saw them. Inv. Shaheed also observed a digital scale next to the open shoebox.

Inv. Shaheed testified that he awakened Defendant and informed him of the arrest warrant. After giving Defendant the opportunity to get dressed, he handcuffed him and read him his Miranda rights.[2] Inv. Shaheed then led Defendant to the living room and remained

---

[1] Inv. Shaheed informed the Court that he was accompanied by Special Agent Ron Griffin, FBI Task Force Officer Jason Vincent, RCSO Investigators Eric Williams and Richard Cowell, and RCSO Deputies Billy Jones and Rick Chase. Deputy Rick Chase was the canine handler on the scene.

[2] See Miranda v. Arizona, 384 U.S. 436 (1966).

2

with him, as he had been informed by other officers that Defendant was a potential flight risk. While in the living room, Inv. Shaheed observed a second digital scale on the living room table, and Defendant told him that the scale and that "everything they found" would be his; his family knew nothing about his activities. Upon receiving this information, Inv. Shaheed instructed a fellow officer to go back into the bedroom and seize the plastic bags of cocaine and marijuana that he had observed in plain view. Before the drugs were seized, however, the drug dog handled by Deputy Rick Chase gave a positive alert to the items on the night stand and in the shoebox. Investigator Richard Cowell recovered and field-tested the substances at Defendant's residence, and the tests came back positive for cocaine and marijuana.[3] According to Inv. Shaheed, only "a couple of minutes" elapsed between the time he entered the residence and the time Defendant was secured in the living room.

## II. DISCUSSION

Here, Defendant has argued that the drugs and other evidence recovered should be suppressed as exceeding the scope of a search incident to arrest. Specifically, Defendant contends that the officers recovered the drugs during an impermissible protective sweep of his residence. (Doc. no. 247, p. 3) (citing Maryland v. Buie, 494 U.S. 325 (1990)). Buie authorizes two types of protective sweeps as searches incident to arrest. The first type allows officers to look in closets or spaces immediately adjoining the place of arrest "as a precautionary matter and without probable cause or reasonable suspicion." Buie, 494 U.S. at 334. A more pervasive search may be undertaken where there are "articulable facts which,

---

[3]Inv. Shaheed testified that approximately fifteen grams of cocaine and one pound of marijuana were recovered.

3

taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id.

As noted above, Inv. Shaheed testified that he observed the drugs in clear plastic bags on the night stand and in the shoebox at the foot of the bed, as well as the first digital scale, as soon as he entered Defendant's bedroom. Defendant was then awakened and placed under arrest. While Inv. Shaheed was securing Defendant in the living room, he saw a second digital scale on top of the living room table. Not surprisingly, Defendant presents a different chain of events in the affidavit supporting his motion, contending that the drugs were seized outside the scope of a search incident to arrest when his room was searched and the drug dog at the scene gave a positive alert. (Doc. no. 158, p. 2). Thus, whether the drugs were seized during a protective sweep is a question of credibility. Defendant did not testify at the evidentiary hearing, and the statements made in the affidavit were not subject to cross-examination. Thus, the only testimony the Court has before it is Inv. Shaheed's statements that the items seized were readily visible during the course of Defendant's arrest. It is undisputed that Inv. Shaheed was legitimately in a position to view the drugs and other items seized as one of the arresting officers. Moreover, Inv. Shaheed explained that the drug dog was brought in to verify the presence of drugs and only alerted after Inv. Shaheed had observed the items in plain view. Thus, the Court credits Inv. Shaheed's testimony that the drugs were not observed during any sort of protective sweep. Accordingly, Defendant's argument regarding a search incident to arrest is without merit, and the Court proceeds to consider the government's argument that the drugs were lawfully seized in plain view.

The Supreme Court has set forth specific criteria concerning the warrantless seizure of incriminating evidence found in plain view. First, the officer seizing the evidence must not have violated the Fourth Amendment in arriving at the position from which the evidence can be plainly viewed. Horton v. California, 496 U.S. 128, 136 (1990). In addition, the incriminating nature of the item must be "immediately apparent," and the police must have a lawful right of access to the object. Id. at 136-37. Of particular note in this case, the Eleventh Circuit has further explained that "if police see contraband in plain view while inside a home executing an arrest warrant, . . . they may seize it as evidence of a crime." United States v. McGough, 412 F.3d 1232, 1237 (11th Cir. 2005); see also United States v. Hromada, 49 F.3d 685, 690 (11th Cir. 1995) ("If an officer has lawfully executed a valid arrest warrant, he is not required to shut his eyes to contraband in plain view in order to accommodate the arrestee's desire to avoid further charges.").

Here, there can be no doubt that Inv. Shaheed arrived at the position where he observed the drugs and digital scales in a lawful manner. A valid arrest warrant had been issued for Defendant, and Inv. Shaheed personally observed and confirmed the validity of the arrest warrant on the morning of the arrest.[4] Moreover, the drugs were observed by Inv. Shaheed as soon as he entered Defendant's bedroom to execute the arrest warrant. In addition, while Inv. Shaheed did not recover the drugs and other items, they were recovered by a member of the team executing the arrest warrant for Defendant, namely Investigator Richard Cowell. As the arrest warrant for Defendant was valid and Investigator Cowell was

---

[4] Defendant does not contest that a warrant for his arrest had been issued, even though Inv. Shaheed did not have the arrest warrant with him on the day in question

on the team executing that warrant, there can be no doubt that he had a lawful right of access to the items seized.

Finally, Inv. Shaheed's testimony reveals that the incriminating nature of the items seized was immediately apparent. Upon entering the bedroom, Inv. Shaheed was tipped off to the possible presence of drugs when he smelled the odor of marijuana. He then immediately observed a white powdery substance in a clear plastic bag on the night stand next to Defendant's bed, as well as an open shoebox at the foot of the bed that contained several clear plastic bags of what looked like marijuana. Based on his training and experience, Inv. Shaheed knew that the clear plastic bags contained cocaine and marijuana. In particular, the Court notes that the items were not found in any closed compartments or drawers. Inv. Shaheed testified specifically that the bag containing the cocaine was on top of the night stand and that the shoebox in which the plastic bags of marijuana were observed was open and did not have a lid. Both substances were observed in <u>clear</u> plastic bags. In addition, the digital scale in the bedroom was observed next to the open shoebox, and the digital scale from the living room was sitting on top of the living room table. See <u>United States v. Watchmaker</u>, 761 F.2d 1459, 1472-73 (11th Cir. 1985). Stated otherwise, there was nothing obscuring the drugs or the scales from view, and it is clear that the incriminating nature of the items seized was immediately apparent to Inv. Shaheed at the time he entered Defendant's bedroom and when he secured Defendant in the living room. Accordingly, the Court finds that the items seized were recognized in plain view pursuant to a valid warrant for Defendant's arrest.

## III. CONCLUSION

In conclusion, the Court finds that the drugs and digital scales were not seized during any search incident to Defendant's arrest. Rather, the record reflects that they were lawfully seized in plain view during Defendant's arrest. Therefore, the Court **REPORTS** and **RECOMMENDS** that the motion to suppress be **DENIED**. (Doc. no. 157).

SO REPORTED and RECOMMENDED this 25th day of March, 2009, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE